## Sheehan v. Baldino

746

*Holl, Taylor & Holl,* for plaintiffs.
*James N. Robertson,* for defendants.

BRETHERICK, J., November 25, 1955.—This action in ejectment comes before us on preliminary objections by way of demurrer to the answer and counterclaim. The preliminary objections will be sustained in part.

The complaint sets forth plaintiffs' abstract of title, and avers that plaintiffs orally leased the premises to defendants for the monthly rental of $56 and for the maintenance of the premises in good order and repair. It is further averred that on August 26, 1953, plaintiffs served notice on defendants that the monthly rental for the premises would be increased from $56 to $75 per month commencing September 27, 1953, that on December 23, 1953, defendants having failed and neglected to pay the increased rental, plaintiffs gave them written notice demanding that they either pay the then unpaid rental amounting to $57 or quit the premises within 30 days, that defendants have both failed to pay the increased rental or to vacate the premises.

Plaintiffs further aver that defendants, having remained in possession of the premises after receipt of the written notice of August 26, 1953, that the *rent* would be increased to $75 per month starting September 27, 1953, and having remained there until the present date, owe to plaintiffs the sum of $1,725, that defendants are entitled to a credit in the amount of $1,288 representing payments to the Sharon Building

Association, leaving a balance owing to plaintiffs of $437, that the fair and reasonable value of the *use and occupation* of the premises from September 27, 1953, to date is $75 per month, that defendants have *used and occupied* the premises from September 27, 1953, to date, and are indebted to plaintiffs in the sum of $1,725, that defendants are entitled to a credit of $1,288 representing payments to the Sharon Building Association, leaving a balance owing plaintiffs of $437, that plaintiffs are, and since January 23, 1950, have been, the owners in fee simple of the premises, that "since September 27, 1953, the plaintiffs have been deprived of the profits, issues and rents from the aforesaid premises, being of the monthly value of $75, less certain credits hereinbefore mentioned."

The answer expressly admits plaintiffs' title to the premises. However, defendants deny an oral lease, and aver that they entered into possession of the premises on plaintiffs' oral promise to deed the premises to defendants at the end of two years if defendants paid the monthly carrying charges on the mortgage of $56 per month. Defendants admit that on or about August 26, 1953, "there was a discussion concerning the requirement on the part of the plaintiffs to have the defendants pay additional amounts over and beyond the mortgage payment," but aver that defendants informed plaintiffs of the agreement to transfer the property to defendants. Defendants admit receipt of the written notice of December 23, 1953, from plaintiffs, and further admit that they have failed to pay the increased rental or to vacate the premises, but deny that "there was any legal obligation to pay any increased sums."

Defendants aver in their answer that they have retained possession of the premises under the original agreement, that they have paid $56 per month to the

Sharon Building Association representing the carrying charge on the mortgage, that the reasonable value of the use and occupation of the premises is $50 per month, that they are not indebted to plaintiffs in any amount whatsoever.

In their counterclaim, defendants seek to recover from plaintiffs the sum of $1,266.73, representing money advanced by defendants to plaintiffs in connection with the purchase of the property by plaintiffs, money expended by defendants in connection with the repair and rehabilitation of the premises by defendants, and the reasonable value of defendants' labor expended in such repair and rehabilitation.

The pleadings before us expressly incorporate therein by reference the pleadings in an earlier action in this court, no. 2356, November term, 1953, in equity, between these same parties and involving the same premises. In that case, the Baldinos filed a complaint alleging that in or about December, 1949, they were being evicted from their residence and had no housing accommodations at that time, that Edward J. Sheehan offered to purchase for the Baldinos the premises here in question in his name, if the Baldinos paid all expenses, made necessary repairs to the building, kept up the mortgage payments, paid the taxes, and kept the place in good repair, that the Sheehans promised, at the end of two years, if the Baldinos did the necessary work and paid the necessary funds, to transfer the real estate to the Baldinos, that by reason of these promises, the Baldinos advanced the sum of $222.50 for the Sheehans to pay for settlement costs, investigative work and reports necessary to purchase the property, that on January 23, 1950, the Sheehans made settlement on the premises and received a deed therefor, which deed was duly recorded, that on the same day, the Sheehans executed a mortgage on the

premises, with accompanying bond, to the Sharon Building Association in the amount of $6,700, said amount being the entire purchase price of the premises, which mortgage was duly recorded, that the Baldinos paid and have continued to pay to the Sharon Building Association the monthly charges on the said mortgage, that the Baldinos have made extensive repairs to the real estate, and have been in possession thereof at all times since January 23, 1950, that demand has been made on the Sheehans to execute and deliver a deed to the premises to the Baldinos, which demand has been refused. The Baldinos prayed that the Sheehans be declared to hold the premises as trustee for the Baldinos, that the Sheehans be ordered and directed to execute and deliver to the Baldinos a deed to the premises in fee simple, etc.

The Sheehans filed an answer containing new matter, in which they denied the allegations of the complaint upon which the Baldinos relied for relief. The Sheehans averred that during the month of November, 1949, the Baldinos were about to be evicted from their then residence, that at about that time, the Sheehans were negotiating for the purchase of the premises in question, that the Sheehans desired to purchase the premises but had no immediate necessity to occupy the same because of other living arrangements, that because of the temporary requirements of the Baldinos and the Sheehans, it was agreed that the Sheehans would complete their purchase as theretofore planned, the Baldinos would go into possession as tenants of the Sheehans, the Baldinos would pay rent to the Sheehans in an amount equal to the carrying charges, taxes, etc., in lieu of rent, and the Baldinos would make necessary repairs and keep the premises in good order, inasmuch as the said payments were substantially below the then fair rental value. The Sheehans further averred that

the Baldinos went into possession and in accordance with the agreement paid the Sheehans the stipulated monthly payments of $56 from January 1950 until August 1953, that prior to September 1953 the Baldinos never made any payments directly to the Sharon Building Association, the mortgagee, that any and all expenditures made by the Baldinos for repairs to the premises were made in fulfillment of their agreement with the Sheehans and were in lieu of rent.

The Sheehans then go on to admit the purchase of the property by them for the consideration of $6,700, and the execution and delivery of a bond and mortgage in that amount to the Sharon Building Association. It is then averred that the settlement charges were paid by the Sheehans, that the Baldinos paid no part of the purchase price or of the settlement charges and did not attend the settlement.

Finally, the Sheehans (in the equity proceedings) averred that the "one hundred percent" mortgage on the premises is guaranteed by the United States under the Servicemen's Readjustment Act, that, under that act and the rules and regulations promulgated in pursuance thereof, only persons who meet designated qualifications respective to service with the armed forces of the United States are eligible to have mortgages guaranteed under the provisions of this act, that Edward J. Sheehan has fulfilled and complied with all of the terms and requirements of the act and regulations in that he served with the armed forces of the United States, that neither of the Baldinos has fulfilled or complied with any of the terms or requirements of the act and regulations, in that neither of them ever served in the armed forces of the United States, that there is no agreement, oral or written, whereby the property in controversy should be purchased or held in the names of the Sheehans for the benefit of the Baldinos, that for the Sheehans to take title in their

names in order to procure for the Baldinos the benefits of the "G. I. Bill of Rights", to which benefits the Baldinos are not entitled, "would be illegal, void and a fraud on the Servicemen's Readjustment Act and on the government of the United States of America".

Under date of March 21, 1955, this court, in an order signed by Judge Toal, entered judgment on the pleadings in the equity case in favor of the Sheehans and against the Baldinos.

Turning, now, to consideration of the questions raised in the instant proceedings, we are of opinion that the demurrer to the answer must be sustained as respects the claim in ejectment, and defendants tacitly admit as much in their brief of argument. The pleadings establish in plaintiffs the right to possession of the premises in question and the immediate right to enter. See, 13 Standard Pa. Practice, Ejectment and Quieting Title, sec. 5. Plaintiffs' promise to convey the premises to defendants at the end of two years, subject to the stipulated conditions, assuming the existence of such a promise, was, of course, illegal and null and void, but it was purely a collateral undertaking in no way affecting the validity of plaintiffs' title and without bearing on plaintiffs' rights in this case. " 'The test, whether a demand connected with an illegal transaction is capable of being enforced at law, is whether the plaintiff requires the aid of the illegal transaction, to establish his case' ": First National Bank of Greencastle v. Baer et al., 277 Pa. 184, 189. Applying that test to the present facts, it is obvious that plaintiffs are entitled to a judgment in ejectment.

Plaintiffs' claim for a money judgment presents another question. Pa. R. C. P. 1055 provides: "The plaintiff may state in the complaint any cause of action for profits for the use of or damages for injury to

the land." It is clear that this language refers to a cause of action for mesne profits, which is an action in trespass. Assumpsit does not lie for mesne profits. It appears to us that plaintiffs' claim for damages as set forth in their complaint sounds in assumpsit for rent or for use and occupation, rather than in trespass for mesne profits. We are led to this conclusion because plaintiffs seek damages for the period from *September 27, 1953*, to the date of suit, and not merely for the period of defendants' tortious holding which began on January 22, 1954. There is thus an improper joinder of causes of action. Moreover, if a plaintiff elects to join his claim for mesne profits with his action in ejectment, he must separate them into separate counts: Goodrich-Amram, sec. 1055-1.

We are of opinion, therefore, the plaintiffs' claim for damages must be stricken from the record. It follows, of course, that defendants' counterclaim must likewise be stricken from the record. See, Pa. R. C. P. 1056(*a*).

## Order

And now, November 25, 1955, upon consideration of the within case, it is ordered, adjudged and decreed as follows:

1. The preliminary objections to the answer are sustained in part, as above stated, and judgment in ejectment is entered in favor of plaintiffs and against defendants for the premises described in the within complaint.

2. Plaintiffs' claim for damages, as set forth in the complaint, is stricken from the record, without prejudice to any further rights of plaintiffs, if any.

3. Defendants' counterclaim is likewise stricken from the record, without prejudice to any further rights of defendants, if any.